UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-81110-CIV-HURLEY (lead case - consolidated with
Case No. 04-80253)

MAUREEN STEVENS, individually and as
Personal Representative of the Estate of
ROBERT STEVENS, and on behalf of
NICHOLAS STEVENS, HEIDI HOGAN and
CASEY STEVENS,
    plaintiffs,

Case No. 03-81110

vs

UNITED STATES OF AMERICA,
    defendant
_____/



MAUREEN STEVENS, individually and as
Personal Representative of the Estate of
ROBERT STEVENS, and on behalf of
NICHOLAS STEVENS, HEIDI HOGAN and
CASEY STEVENS,
    plaintiffs,

vs

BATTELLE MEMORIAL INSTITUTE,
    defendant.
_____/

Case No. 04-80253

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS & MOTION FOR JUDGMENT ON THE PLEADINGS

THIS CAUSE is before the court upon the motion to dismiss filed by the defendant United States of America [DE # 33, Case No. 03-81110 ] and the motion for judgment on the pleadings filed by defendant Battelle Memorial Institute [DE# 29, Case No. 04-80253] in the above styled cases which have been consolidated for discovery purposes only at this juncture.

1



## I. Introduction

Plaintiff's decedent, Robert Stevens, was one of several persons who was killed or injured after contracting anthrax in the fall of 2001 after an as yet unidentified person(s) came into possession of a deadly strain of anthrax bacteria and mailed it to designated addresses throughout the United States, including the America Media, Inc. building in Boca Raton, Florida, where Mr. Stevens was employed. Mr. Steven's widow, Maureen Stevens, as personal representative of the Estate of Robert Stevens, brings this wrongful death suit against the United States of America ("the government") alleging that the anthrax which killed Mr. Stevens was intercepted from a government medical research facility in Fort Dedrick, Maryland due to negligent security procedures in place at that facility, or negligent security attendant to the government's transport of the bacterium to another research laboratory. [1] (Case No. 03-80110). As additional or alternative theory of recovery, plaintiff brings claim against Battelle Memorial Institute ("Battelle"), a private research facility, alleging that the anthrax which killed Mr. Stevens was intercepted from Battelle due to negligent security procedures in place at its facility. (Case No. 04-80253).

## II. Plaintiff's Complaint

Plaintiff contends that the origin of the strain of anthrax bacillus which killed Mr. Stevens is traceable to the United States Army Medical Research Institute of Infectious Diseases

---

[1]

Plaintiff's complaint also includes a strict liability claim against the government based on the ultra hazardous activity doctrine. (Count 1). However, the government contends, and plaintiff agrees, that the FTCA waives government immunity only for fault- based claims, effectively precluding any claim against it based on strict liability. Pursuant to the parties' agreement on this point, the court shall dismiss Count 1 of the complaint.

("USAMRIID") in Fort Dedrick, Maryland. Plaintiff alleges that the government owned or controlled the deadly bacillus, and was negligent in fulfilling its security obligations in handling this lethal property,[2] consequently allowing its unauthorized interception at a time prior to October 2001, either directly from the government facility in Fort Dedrick, or alternatively, from another research facility to which the material had been shipped. As a result, an unknown person or persons gained access to the anthrax and caused it to be mailed to various points throughout the United States, ultimately killing five persons -- including Mr. Stevens-- and infecting numerous others who were exposed to its deadly spores.

Significantly, plaintiff does not specifically allege whether the person who initially intercepted the anthrax in question and the person who ultimately mailed it to Florida is one and the same person, nor does she identify the relationship between this person or persons and the government. That is, the complaint neither describes the government's relationship to the person(s) who initially intercepted the lethal bacillus-- whether employee, independent contractor or third party interloper --- nor that which exists between the government and the person(s) who ultimately caused the intercepted anthrax to be mailed Mr. Stevens' place of employment in the State of Florida.

---

[2] In further support of her negligent access theory, plaintiff alleges that samples of anthrax, along with samples of the hanta virus and ebola virus, were found missing from the government's Fort Dedrick research facility in 1992, and that despite the obvious security risk thereby associated with these laboratory contagions, the government failed to maintain sufficient security measures reasonably calculated to avoid the risk of interception and disbursement of anthrax and other bio-hazardous materials under its control.

This case was previously stayed for a six month term upon motion of the government based on its stated concern over protecting the integrity of an ongoing criminal investigation into the identity of the anthrax perpetrator. The stay expired by its terms on July 27, 2004.

### III. Defense Motions

### A. Government's Motion to Dismiss

The government has moved to dismiss the complaint under Rule 12(b)(6) Fed. R. Civ. P. for failure to state a claim upon which relief may be granted. By this motion, the government essentially contends that it cannot be liable for any third party criminal activity allegedly occasioned by negligent security practices because it owed no any duty of protection to plaintiff's decedent, nor any duty of control over the unidentified third party tortfeasor (s) responsible for intercepting and depositing the anthrax into the United States mail for delivery to Florida. Alternatively, the government speculates that in the event that the anthrax killer materializes as a government employee, the FTCA exemption for intentional torts, 28 U.S.C. § 2680(h) would bar the claim. *See e.g. Foster v United States*, Case 00-10139 (11th Cir. Aug. 30, 2000)(unpublished opinion)(holding assault and battery exception to FTCA waiver of sovereign immunity barred negligent supervision claim against government arising out of shooting between fellow post office employees).

### B. Battelle's Motion for Judgment on the Pleadings

The defendant Battelle has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), also challenging the threshold duty question and raising further issue on the element of proximate cause.

4

## IV. Discussion

### A. Negligence Claim against the United States

#### 1. Standard of Review

A rule 12(b)(6) motion requires the court to determine if plaintiff has stated a legally sufficient claim. A motion to dismiss may be granted under Rule 12(b)(6) only if it appears to a certainty that plaintiff can prove no set of facts that would entitle him to relief. *Conley v Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed. 2d 80 (1957); *Spanish Broadcasting System of Florida, Inc. v Clear Channel Communications*, 376 F.3d 1065 (11th Cir. 2004). This mandate is especially true where, as here, the issue of negligence is involved. *Canadyne-Georgia Corp. v Nationsbank*, 183 F.3d 1269 (11th Cir. 1999).

In determining a motion to dismiss, the function of the court is not to weigh the sufficiency of the evidence offered in support of the complaint, but merely to test whether the factual allegations state a legally cognizable claim. The threshold of sufficiency to which a complaint is held at this stage is " exceedingly low." *United States v Baxter International*, 345 F.3d 866 (11th Cir. 2003). The court must take the facts alleged in the complaint as true, with all reasonable inferences drawn in favor of the plaintiff. *Stephens v Dept. of Health & Human Services*, 901 F.2d 1571 (11th Cir. 1990).

#### 2. Choice of Law

Under the FTCA, district courts have exclusive jurisdiction of civil actions on claims against the United States for damages caused by the negligent or wrongful act or omission of any government employee while acting within the scope of his office or employment. This liability extends to circumstances where the government, if a private person, would be liable under like

circumstances. 28 U.S.C. § 2674. The Act further requires liability to be determined in accordance with the law of the place where the government's act or omission occurred. *Cole v United States*, 755 F.2d 873, 879 n. 16 (11th Cir. 1985); 28 U.S.C. § 1346 (b).

In this case, both parties assume, without discussion, that the law of the State of Florida, where the injury occurred, should govern the liabilities defined by the Complaint. Although the Court agrees, a brief discussion on the point is warranted.

In requiring that liability be determined "in accordance with the law of the place where the act or omission occurred," the FTCA requires federal courts to apply the "whole law" of the state where the act or omission occurred, including the state's conflict of laws rule. *Richards v United States*, 369 U.S. 1 (1962). In this case, this would result in application of Maryland's conflict of law rules to determine which state's substantive law applies. *See e.g. Munger v United States*, 116 F. Supp. 2d 672 (D. Myd. 2000); *Clawans v United States*, 75 F. Supp. 2d 368 (D. N.J. 1999).

Maryland is one of the few jurisdictions that continues to adhere to the traditional *lex loci delicti* rule, requiring tort actions to be governed by the substantive law of the place of injury. *See Philip Morris Inc. v Angeletti*, 752 A.2d 200, 230-231 (Md. App. 2000). *See also Johnson v Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986)(under Maryland conflict of law jurisprudence, "the law of the place of injury applies. The place of injury is the place where the injury was suffered, not where the wrongful act took place.")

The court believes that under these circumstances Maryland would apply the tort law of Florida, the law of the state where the injury occurred. The discussion therefore turns to Florida law to determine whether tort liability may be imposed against the government based on the facts alleged in plaintiff's complaint.

### 3. Duty of Care

The government argues that plaintiff can state no cognizable claim against it under Florida law because there is no "special relationship" between the defendant and plaintiff's decedent, or between the defendant and any third party tortfeasor, which might bring the case within an exception to the general rule of non-liability for third party misconduct embodied at § 315 of the Restatement (Second) of Torts, which is adopted in Florida. *See generally Michael & Philip, Inc.*, 776 So.2d 294 (Fla. 4th DCA 2000).

Section 315, Restatement (Second) of Torts provides:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection.

Plaintiff counters that her case should not be decided under § 315 principles of third party liability because she has not pled her claim as a failure to control/prevent third party criminal misconduct case. Instead, she is proceeding under the umbrella of a more general liability theory which imposes a legal duty of care "whenever a human endeavor creates a generalized and foreseeable risk of harming others." This is sometimes referred to as the "foreseeable zone of risk" liability theory. *See McCain v Florida Power Corp.*, 593 So.2d 500 (Fla. 1992); *Kaisner v Kolb*, 543 So.2d 732, 735 (Fla. 1989); *Louisville National Railroad Co. v Hickman*, 445 So.2d 1023 (Fla. 1st DCA 1983).

In the court's view, however, the rules of tort liability are not so easily compartmentalized. The "foreseeable zone of risk" concept is relevant here, not as a an *alternative* theory of liability, but rather as one element which drives the common law definitions of who is

charged with a duty of care to act for the benefit or protection of others. *See e.g. Palm Beach-Broward Med. v Cont'l Grain Co.*, 715 So.2d 343, 344 (Fla. 4th DCA 1998), citing *McCain v Florida Power Corp.* 593 So.2d 500, 503 (Fla. 1992) and *W. Page Keeton et al., Prosser and Keeton on the Law of Torts* §42 (5th ed. 1984)("Foreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions... Another way of framing the issue of duty is to ask whether a defendant stood in a 'relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit.")

Thus, foreseeability of risk considerations have shaped the evolution of two specialized rules of tort liability in the arena of third party misconduct liability-- first, the "special relationship" rule, embodied at §315 of the Restatement, and second, the "unreasonable risk of harm by affirmative act" rule embodied at §§ 302, 302A and 302B of the Restatement of Torts (Second), also adopted in Florida. *See e.g. Shurben v Dollar Rent-A-Car*, 676 So.2d 467 (Fla. 3d DCA 1996). The viability of the plaintiff's complaint is discussed under each of these alternative theories.

**a.   Duty under Restatement (Second) of Torts §§ 302, 302A and 302B**

Although not expressly invoked by either party, §§302, 302A and 302B of the Restatement of Torts (Second), governing liability for affirmative acts of commission generating a risk of third party negligence or criminal conduct, most closely mirror the position advanced by the plaintiff in defense of her claim against the government and Battelle.

Section 302 of the Restatement (Second) of Torts provides:

A negligent act or omission may be one which involves an unreasonable risk of harm to another through either

(a) the continuous operation of a force started or continued by the act or omission, or

8

(b) the foreseeable action of the other, a third person, an animal, or a force of nature.

Sections 302A and 302B are "special application[s]" of Clause (b) of [Section 302]." *See* comment b to §302, Restatement (Second) of Torts:

> **Section 302A        Risk of Negligence or Recklessness of Others**
>
> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person.
>
> **Section 302B        Risk of Intentional or Criminal Conduct**
>
> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

The duties described above attach to acts of *commission*, which historically generate a broader umbrella of tort liability than acts of *omission,* which are the subject of §§ 315 and 314A. [3] This distinction is expressed in Comment a, Section 302 of the Restatement of Torts (Second):

---

[3] At Section 314, discussing the origins of the general rule of non liability for misconduct of third parties, the distinction is cast as one turning on "misfeasance" or "nonfeasance" concepts:

> The origin of the rule lay in the early common law distinction between action and inaction, or misfeasance and non-feasance. In the early law one who injured another by a positive affirmative act was held liable without any great regard even for his fault. But the courts were far too much occupied with the more flagrant forms of misbehavior to be greatly concerned with one who merely did nothing, even though another might suffer serious harm because of his [or her] omission to act. Hence liability for non- feasance was slow to receive any recognition in the law. It appeared first in, and is still largely confined to, situations in which there was some special relation between the parties, on the basis of which the defendant was found to have a duty to take action for the aid or protection of the plaintiff.

Comment c, Section 314, Restatement of Torts (Second).

> This section is concerned only with the negligent character of the actor's conduct, and not with his [or her] duty to avoid the unreasonable risk. In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable [person] to protect them against an unreasonable risk of harm to them arising out of the act. The duties of one who merely omits to act are more restricted, and in general are confined to situation where there is a special relation between the actor and the other which gives rise to the duty.

In this case, plaintiff alleges that the government generated, tested and handled deadly laboratory organisms, but failed to employ adequate security procedures during the commission of these acts. Thus, plaintiff contends, the government exposed the public to an unreasonable risk of contamination as a result of unauthorized interception and disbursement of lethal materials. In other words, the complaint effectively alleges the commission of affirmative acts (ownership and handling of biohazards), which, under Section 302b, give rise to a corresponding duty to protect all others exposed to any "unreasonable risk of harm" arising out of that activity.

Considered in conjunction with the further allegations of the complaint regarding the facility's history of missing samples of anthrax bacterium, hanta virus and ebola virus dating back to 1992, which the court must accept as true at this juncture, the court concludes that plaintiff's complaint states a potential claim under Section 302B of the Restatement (Second) of Torts (1965) against the government and will accordingly uphold the sufficiency of the complaint on this basis.

In doing so, the court draws from Florida case law precedent clearly recognizing that negligence liability may be imposed on the basis of affirmative acts which create an unreasonable risk of harm by creating a foreseeable opportunity for third party criminal conduct, even though there is no "special relationship" between the parties that independently imposes a duty to warn or

guard against that misconduct.[4] *See e.g. Shurben v Dollar Rent- a- Car,* 676 So.2d 467 (Fla. 3d DCA 1996 ). In *Shurben*, a British tourist was accosted by unknown criminals while traveling in a rental car bearing a license plate designation easily recognized by knowledgeable criminals as the mark of a rental car. The consumer sued the rental agency in tort, contending that it should have realized criminals were targeting tourist car renters in certain areas of Miami and that a reasonable rental company would have understood that its customers would be exposed to unreasonable risk of harm if not protected against this risk. Although the rental agency and customer did not stand in any "special relation" toward each other, the Court concluded that the circumstances alleged stated a claim within the scope of Section 302B of the Restatement (Second) of Torts (1965), and sustained the plaintiff's complaint on this theory.

Similarly, taking the facts alleged in the complaint as true and reading them in the light most favorable to plaintiff here, the plaintiff's complaint may fairly be read to allege: ( 1) defendant knew or should have known of the risk of bioterrorism associated with lethal laboratory organisms under its ownership and control, particularly in light of its history of missing laboratory specimens dating back to 1992; (2) a reasonable medical research and testing laboratory operator

---

[4]

There is also a line of negligent access to automobile cases lending further support to the notion that an actor may be liable for affirmative acts creating foreseeable risk of third party criminal or negligent misconduct, even though there is no "special relationship" and hence no special duty of care running between the actor and either the victim or third party criminal. *Compare Conklin v Carroll*, 865 So.2d 597 (Fla. 2d DCA 2004)(trial court should have allowed amendments to complaint to assert claim for negligent access to motor vehicle where issues regarding foreseeability of unauthorized user's existed) *with Michael Philip Inc. v Sierra,* 776 So.2d 294 (Fla. 4th DCA 2000)(no liability for accident with stolen auto against gym for negligently allowing thief access to car keys under "foreseeable zone of risk" test where there was no showing that theft of car keys from gym had previously resulted in injury or harm from auto accident occasioned by such theft and could be expected again).

11

in possession of those facts would understand that the public would be exposed to an unreasonable risk of harm unless it implemented adequate security procedures to guard against the risk of unauthorized interception of toxic materials from its laboratory; (3) the death of Mr. Stevens was a foreseeable consequence of the defendant's failure to use reasonable care in adopting and implementing security measures reasonably necessary to protect against the possibility of unauthorized interception and release of the biohazards under its control.

In the court's view, these allegations are sufficient to establish a duty of care under Section 302B of the Restatement (Second) of Torts (1965). *See e.g. Suchomajcz v Hummel Chemical Co., Newark, New Jersey*, 524 F.2d 19 (3d Cir. 1975); *Touchette v Ganal*, 922 P.2d 347 (Haw. 1996).

### b. Duty under Restatement (Second) of Torts, § 315

Sections 314 through 325 of the Restatement (Second) of Torts address potential negligence liability based on acts of *omission*, i.e. the circumstances under which an actor may be charged with a duty to act affirmatively for the protection of others even where the risk of third party harm materializes independently of any affirmative act on the part of the actor himself. At § 314, the Restatement recognizes a general rule of non-liability based on a failure to warn or guard against third party misconduct (in the nonfeasance or acts of omission arena), but goes on at § 315 to identify certain exceptions or "special applications" of the rule which operate to limit its application.

Section 314 of the Restatement (Second) Torts provides:

**Duty to Act for Protection of Others**

The fact that the actor realizes or should realize that action on his [or her] part is necessary for another's aid or protection does not of itself impose upon him [or her] a duty to take such action.

At comment a to Section 314, this general statement of non-liability is thus qualified:

The general rule stated in this section should be read together with other sections which follow. Special relations may exist between the actor and the other, as stated in 315A, which impose upon the actor the duty to take affirmative precautions for the aid or protection of the other. The actor may have control of a third person, or of land or chattels, and be under a duty to exercise such control, as stated in §§ 316-320. The actor's prior conduct, whether tortious or innocent, may have created a situation of peril to the other, as a result of which the actor is under a duty to act to prevent harm, as stated in §§ 321 or 322. The actor may have committed himself [or herself]to the performance of an undertaking, gratuitously or under contract, and so may have assumed a duty or reasonable care for the protection of the other, or even of a third person, as stated in §§ 323, 324, and 324A.

The key provision here is Section 315, which states:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct; or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

The "special relations" between the actor and the other /*victim* referred to in §315 (a) which might trigger a duty to control the conduct of a third person for the protection of another include

(1) common-carrier / passengers
(2) innkeeper/guests
(3) land owner/ invitees
(4) one who is required by law or who voluntarily takes custody of another under circumstances which deprive the other of his normal opportunities for protection.

Restatement Second of Torts at § §314A, 320.

The "special relations" between the actor and third person /*tortfeasor* referred to in § 315(b) which might trigger a duty to control are defined at §§ 316-319, and include:

(1) parent /child (§316)
(2) master /servant (§317)
(3) land possessor / licensee (§318).

In this case, the government argues that it owed no duty of care toward the plaintiff's decedent because it did stand in any of the enumerated "special relationships" with the decedent so as to trigger a duty of special care under 315A, and did not stand in any position of control over the unknown tortfeasor(s) who disseminated the anthrax so as to trigger a duty to control under 315B. Such a rigid reading of the Restatement text, however, is plainly at odds with the intent of the drafters.

Comment b to Section 314A makes clear that the list of relationships delineated in 314A is not intended to be exclusive or exhaustive:

> The duties stated in this section arise out of special relations between the parties, which create a special responsibility and take the case out of the general rule. The relations listed are not intended to be exclusive, and are not necessarily the only ones in which a duty of affirmative action for the aid or protection of another may be found.

Florida courts, for example, have expanded the categories of "special relationships" for purposes of omission liability to include school-minor student, and university-adult student relationships, in addition to employer-employee; landlord- tenant and landowner-invitee relationships. *See Gross v Family Services Agency, Inc.*, 716 So.2d 337, 338 (Fla. 4th DCA 1998), *citing Rupp v Bryant*, 417 So.2d 658 (Fla. 1982)("whether a duty arises in any particular context is resolved as a matter of law after weighing 'the sum total' of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection"), *aff'd sub nom. Nova*

*Southeastern Univ. Inc. v Gross*, 758 So.2d 86 (Fla. 2000).

Thus, although plaintiff in this case does not fit within any one of the relationships specifically referenced by the Restatement at 314A or by existing Florida case law, the court appropriately considers whether the relationship between the government and the plaintiff's decedent is one within the contemplation of 315A, i.e. whether the government, as operator of a medical research laboratory handling lethal organisms and other dangerous contagions may be viewed or charged with a special relationship and duty toward members of the general public who foreseeably might be harmed by the unintended or intentional release of those properties.

*In Re September 11 Litigation*, 280 F. Supp. 2d 279 (S.D. N.Y. 2003), addressing the viability of a negligent security claim against various airlines and airline security companies involved in the unprecedented airline hijacking terrorist tragedy of September 11, 2001, is instructive on this point. Although the New York court did not couch its analysis in terms of Restatement duties, its discussion is reminiscent of these concepts, and bears examination here.

In *September 11 Litigation*, plaintiffs alleged that the aviation defendants negligently failed to carry out their duty to secure passenger aircraft against potential terrorists and weapons smuggling, enabling the terrorists to hijack and crash four airplanes, two of which crashed into the World Trade Center in New York City. Plaintiffs further alleged that defendants obviously were aware of the risk of terrorist hijacking, as they employed security measures specifically designed to guard against it, and knew or should have known that the hijacking of a jumbo jet would create a substantial risk of damage, not only to passengers and crew, but also to people and property on the ground.

In addition, plaintiffs asserted that terrorism was a substantial international concern, and that suicidal acts by terrorists seeking to cause death, injury and havoc to as meany people as possible had become a frequently used strategy. Despite the absence of any airline crashes in residential areas precipitated by *intentional* terrorist activity, the district court ultimately concluded that the aviation defendants owed a duty of care to protect ground victims from the harm posed by this risk, and that the complaint stated a potential claim against them for breach of this duty of care.

Mindful that New York courts, like most jurisdictions, have been reluctant to extend liability based on a failure to control the conduct of third parties, the *Sept 11* court started with the the general proposition that these liabilities have nonetheless historically been imposed to achieve effective risk allocation in situations where the defendant has control over the third party tortfeasor's action, or the relationship between defendant and plaintiff requires the defendant to protect the plaintiff from third party misconduct of others, observing: "The key in each [situation] is that the defendant's relationship relationship with either the tort feasor or plaintiff is such that it puts the defendant in the best position to protect against the risk of harm.   *Id.* at 290, *citing Hamilton v Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 727 N.Y.S.2d 7, 750 N.E.2d 1055, 1060 (2001).

Considering the unique duty issues posed by the unprecedented criminal activity at issue, the court undertook to "fix the duty point" by weighing numerous factors, "including the reasonable expectations of the parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer like liability, the disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability" impacting on the efficiency of the allocation. *Id., citing Palka v Servicemaster Mgmt. Serv. Corp.*, 83 N.Y. 2d 579, 611 N.Y.S.2d 817, 634 N.E.2d 189 (1994).

Finding, first, that the "reasonable expectation" factor tipped toward imposition of duty, it observed:

> Ours is a complicated and specialized society. We depend on others charged with special duties to protect the quality of the water we drink and the air we breath, to bring power to our neighborhoods, and to enable us to travel with a sense of security over bridges, through tunnel and via subways. We live in the vicinity of busy airports, and we work in tall office towers, depending on others to protect us from the willful desire of terrorists to do us harm. Some of those on whom we depend for protection are the police, fire and intelligence departments of local, state and national governments. Others are private companies, like the aviation defendants. They perform their screening duties, not only for those boarding airplanes, but also for society generally. It is both their expectation, and ours, that the duty of screening was performed for the benefit of passenger and those on the ground, including those present in the Twin Towers on the morning of September 11, 2001.

Focusing next on the issue of disproportionate risk allocation, it concluded that the aviation defendants were in a superior position to control the boarding of airplanes, and were hence in the best position to provide reasonable protection against hijackers and the dangers they presented, to the crew, passengers and ground victims. Finding that imposition of a duty on the aviation defendants thus represented the best allocation of the risk to ground victims posed by inadequate screening, particularly in light of the defendants' existing and admitted duty to screen passengers, the court concluded that the aviation defendants owed a duty of care to the ground victim plaintiffs and were potentially liable in tort for negligent breach of that duty.

A similar analysis might be drawn here. It is reasonable for members of the general public to expect that security procedures and policies governing handling of lethal biohazards by medical research laboratories are designed not only for the protection of the employees and communities surrounding the laboratories, but for the public at large which is realistically and foreseeably at risk in the event of that a deadly organism or contagion is released. The laboratory operator stands in

the best position to prevent unauthorized access or interception of such biohazards, and hence is in the best position to provide reasonable protection against the risk of bioterrorism or the interception and disbursement of those materials into the society at large. In terms of effective risk allocation, recognition of a special duty of care makes sense in this context.

As with the risk identified in *Sept. 11 Litigation,* bioterrorism "presents a substantial elevation of risks," not only to those in the vicinity of the laboratory, but to the general public as well, and a special duty of care is appropriately charged against the laboratory operator which has a superior ability to control and screen those persons having access to the lethal properties which it houses. The court thus concludes that a duty of care is alternatively charged to the government under the "special relationship" test set forth in Section 315 of the Restatement (Second) of Torts.[5]

### 4. Affirmative Defense

As for the intentional tort exemption asserted by the government, the complaint does not allege that the criminal interception/disbursement of the anthrax was perpetrated by a government employee, and the claim is thus not susceptible on its face to disposition on the basis of this affirmative defense. If it is determined that the perpetrator was a government employee, the

---

[5] Florida also recognizes an exception to the general rule against liability for third party misconduct where, at the time of the injury, the defendant is in actual or constructive control of the instrumentality of harm; the premises on which the tort was committed or the tort feasor. *Daly v Denny's Inc.* 694 So.2d 775, 777 (Fla. 4th DCA 1977). Here, the injury did not occur on the government's property, nor is there any allegation that the government had the right to control the tort feasor. However, as the alleged owner of the strain of the anthrax bacillus which killed Mr. Stevens, it is conceivably charged with a duty to protect Mr. Stephens against tortious conduct of another as a person in constructive control of the instrumentality of harm. Because the result reached in this case is sustainable under either 302B or alternatively under 315A of the Restatement, it is unnecessary for the court to definitively resolve this question at this juncture, where the manner of interception/release remains unclear.

18

defense may be revisited. It is simply premature to consider its application at this juncture of the proceedings.

### B. <u>Negligence Claim Against Battelle</u>

### 1. <u>Standard of Review</u>

Judgment on the pleadings is appropriate under Rule 12(c) material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. *Horsely v Rivera*, 292 F.3d 695 (11th Cir. 2002). As with a motion to dismiss, a complaint may be disposed of on this premise only where it is clear from reviewing the pleadings that the plaintiff would not be entitled to relief under any set of facts that could be proven consistent with the allegations of the complaint. *Id.* And, in resolving the motion, the court is required to accept all facts alleged in the complaint as true, with all reasonable inferences from the allegations drawn in plaintiff's favor. *Moore v Liberty National Life Ins. Co.*, 267 F.3d 1209 (11th Cir. 2001).

### 2. <u>Discussion</u>

The plaintiff's alternative complaint against Battelle is apparently designed to capture the possibility that the anthrax which killed Mr. Stevens was intercepted from Battelle's facility after it was shipped to that facility by the government. The negligent security issues and attendant duties of care are the same here, and for reasons discussed in the foregoing discussion, the court finds the complaint sufficient to state a claim against Battelle under either 302B or 315 of the Restatement of Torts, and shall accordingly deny its motion.

## V. Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1. The government's motion to dismiss [DE#33 ] is **DENIED.**

2. The defendant Battelle's motion for judgment on the pleadings [DE# 29 ] is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this _15_ day of April, 2005.

                                             Daniel T. K. Hurley
                                        United States District Judge

cc.
Richard Schuler, Esq.
Christina Falk, Justice Department
Martin Woods, Esq.

For updated court information, visit unofficial Web site at http://us.geocities.com/uscts