UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NUMBER: 03-81110-CIV-HURLEY/HOPKINS

MAUREEN STEVENS, as Personal
Representative of the Estate of ROBERT
STEVENS, Deceased, and on behalf of
MAUREEN STEVENS, Individually,
NICHOLAS STEVENS, HEIDI HOGAN
and CASEY STEVENS, Survivors,

      Plaintiffs,

vs

UNITED STATES OF AMERICA,

      Defendant.
_____/

## DECLARATION OF LEON B. TARANTO, TRIAL ATTORNEY, CIVIL DIVISION

Pursuant to 28 U.S.C. § 1746, LEON B. TARANTO hereby declares and states as follows:

(1) I am a Trial Attorney with the Torts Branch (Environmental Torts), Civil Division, United States Department of Justice, and am one of the counsel of record for the Defendant, United States of America, in this litigation.

(2) As counsel of record for Defendant, I have been involved in preparing and filing motions and other submissions in this litigation, and also interacting with other offices and agencies of the United States in connection with this litigation, including the Department of the Army, the Federal Bureau of Investigation (FBI), and the United States Attorney's Office for the District of Columbia (U.S. Attorney's Office). The FBI and the U.S. Attorney's Office worked on the Amerithrax investigation of the anthrax letter attacks.

(3) On July 15, 2011, Defendant filed, *inter alia*, its Motion to Dismiss for Lack of Subject Matter Jurisdiction (Based on the FTCA's Assault and Battery Exception) or, in the

Alternative, for Summary Judgment (Based on the FTCA's Analogous Private Liability Requirement and a Corresponding Lack of Causation-In-Fact), and supporting Memorandum [DE# 153]; Statement of Material Facts in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction (Based on the FTCA's Assault and Battery Exception) or, in the Alternative, for Summary Judgment [DE# 153-1]; and Statement of Material Facts Not In Genuine Dispute in Support of its Motion for Summary Judgment Based on the Absence of Proximate Cause [DE# 154-1].

(4) The three referenced filings [DE#'s 153, 153-1, and 154-1] include statements that require amendment, clarification or correction, based upon information that officials associated with the Amerithrax investigation (FBI and U.S. Attorney's Office) subsequently provided to the Civil Division. Those changes pertain to three subjects: the presence and location of drying equipment within USAMRIID; the identification of laboratories receiving RMR-1029 anthrax material from USAMRIID prior to the anthrax letter attacks; and the limitations on the efficacy of searches of people exiting USAMRIID laboratories with respect to certain microorganisms.

(5) The original Statement of Facts in Support of Defendant's Motion for Summary Judgment Based on Absence of Proximate Cause stated at ¶ 28: "USAMRIID did not have the specialized equipment in a containment laboratory that would be required to prepare the dried spore preparations that were used in the letters." That statement was based upon deposition testimony that USAMRIID did not have specialized equipment in a containment laboratory that would be required to prepare the dried spore preparations that were used in the letters. Containment, in that context, was the phrase used in witness testimony for the Biological Safety Level (BSL)-3 containment suite, where live anthrax was handled, as distinguished from the lower biosafety level BLS-2 suite, where USAMRIID performed no work with live anthrax and

did not store live anthrax. Deponents had referred to a large, refrigerator-size, piece of equipment – a lyophilizer – that was located in the BSL-2 suite, and not present in the BSL-3 suite. After the original filing, officials associated with the Amerithrax investigation and prosecution notified the Civil Division that the original statement at ¶ 28 is technically incorrect since the lyophilizer was located in a containment suite (the lower biosafety level BSL-2 suite), and also because a speed-vac – a much smaller piece of equipment that can be used for drying – was present in the BSL-3 suite. Defendant seeks to amend the affected sentence at ¶ 28 to more correctly state the facts as follows: "Although USAMRIID had equipment that could be used to dry liquid anthrax in the same building where anthrax research was conducted, USAMRIID did not have a lyophilizer in the specific containment laboratory where RMR-1029 was housed to prepare the dried spore preparations that were used in the letters."

(6) Page 3 of the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Based on the FTCA's Assault and Battery Exception) states: "Although the government has agreed that it 'owned, managed, grew, [and] experimented' with a batch of anthrax (known as RMR-1029) that was 'genetically similar, but dissimilar in its form, to the anthrax that resulted in the death of Robert Stevens,' and that this anthrax was 'produced by Dr. Bruce Ivins,' the record is clear that, prior to the attacks, anthrax from this same batch was lawfully sent to a number of different private medical research facilities." That statement was based upon a Reference Material Receipt Record that Dr. Ivins maintained for RMR-1029, listing amounts used for different purposes, including amounts used for several different laboratories. Based upon the RMR-1029 record, and witness testimony concerning that record, it appeared that samples of the RMR-1029 material were provided to several other laboratories prior to October 2001, including, at least, Battelle, BioPort, and Covance. Since Covance is an animal laboratory,

3

and a witness indicated that the material would have likely been irradiated (killed) before shipment to Covance, the distribution to Covance was not mentioned in the original filing. After the original filing, officials associated with the Amerithrax investigation and prosecution notified the Civil Division that BioPort would not have received RMR-1029 material. Also, the Civil Division later determined, based upon documentation, that the RMR-1029 used for BioPort was associated with another researcher at USAMRIID, and thus presumably used in-house at USAMRIID and not shipped to BioPort. Since the Civil Division can confirm shipments of live RMR-1029 material only to Battelle prior to the anthrax letter attacks, Defendant seeks to factually correct the record concerning known recipients of live RMR-1029 material, as follows: "Although the government has agreed that it 'owned, managed, grew, [and] experimented' with a batch of anthrax (known as RMR-1029) that was 'genetically similar, but dissimilar in its form, to the anthrax that resulted in the death of Robert Stevens,' and that this anthrax was 'produced by Dr. Bruce Ivins,' the record is clear that, prior to the attacks, anthrax from this same batch was lawfully sent to another private medical research facility."

(7) For the reasons stated in ¶ 6 above, Defendant also seeks to amend five related statements in its Motion to Dismiss for Lack of Subject Matter Jurisdiction (Based on the FTCA's Assault and Battery Exception), and the supporting Statement of Facts.

    a. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Based on the FTCA's Assault and Battery Exception) states at page 3, note 12: "U.S. Ex. AB-2 (RMR-1029 Reference Material Receipt Record) at ARMY02-010387-88 (reflecting that, in the years preceding the September/October 2001 attacks, portions of the RMR-1029 batch were provided to private laboratories operated by BioPort and Battelle) …" To correct the record concerning the confirmed recipients of live

4

material from RMR-1029 prior to the anthrax letter attacks, and time period, Defendant seeks to amend its Motion to Dismiss to instead state: "U.S. Ex. AB-2 (RMR-1029 Reference Material Receipt Record) at ARMY02-010387-88 (reflecting that, in the months preceding the September/October 2001 attacks, portions of the RMR-1029 batch were provided to a private laboratory operated by Battelle); ..."

b. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Based on the FTCA's Assault and Battery Exception) states at pages 26-27: "Although the parties have stipulated that, 'the anthrax to which Mr. Stevens was exposed was produced by Dr. Bruce Ivins, a federal employee scientist who worked with anthrax in the course of his regular duties at [USAMRIID] at Ft. Detrick, Maryland,' this particular batch of anthrax was properly shared, prior to the attacks, with a number of different facilities outside the control of the government, including private research laboratories at BioPort and Battelle." Defendant seeks to amend its Motion to Dismiss to instead state: "Although the parties have stipulated that, 'the anthrax to which Mr. Stevens was exposed was produced by Dr. Bruce Ivins, a federal employee scientist who worked with anthrax in the course of his regular duties at [USAMRIID] at Ft. Detrick, Maryland,' this particular batch of anthrax was properly shared, prior to the attacks, with another facility outside the control of the government (a private research laboratory at Battelle)."

c. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Based on the FTCA's Assault and Battery Exception) states at page 27: "Upon the receipt of RMR-1029 spores, these private research laboratories could have in turn provided aliquots to other laboratory facilities for legitimate research purposes." Defendant

5

seeks to amend its Motion to Dismiss to instead state: "Upon the receipt of RMR-1029 spores, the private research laboratory was allowed to provide aliquots to other laboratory facilities for legitimate research purposes."

d. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Based on the FTCA's Assault and Battery Exception) states at page 27, note 69: "The Reference Material Receipt Record for RMR-1029 reflects a number of examples of pre-attack shipments to private facilities, for example: on December 4, 2000, 100 mL of RMR-1029 were provided to BioPort (a private biopharmaceutical and biotech company); on May 1, 2001, 90 mL of RMR-1029 were provided to Battelle (a private science and technology company); and on June 15, 2001, 50mL of RMR-1029 were provided to Battelle." Defendant seeks to amend its Motion to Dismiss to instead state: "The Reference Material Receipt Record for RMR-1029 reflects an example of pre-attack shipments to a private facility, including: on May 1, 2001, 90 mL of RMR-1029 were provided to Battelle (a private science and technology company); and on June 15, 2001, 50mL of RMR-1029 were provided to Battelle."

e. Defendant's Statement of Facts submitted in support of the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Based on the FTCA's Assault and Battery Exception) states at page 2, ¶ 12: "The Reference Material Receipt Record maintained for RMR-1029 reflects a number of examples of pre-attack shipments to private facilities. U.S. Ex. AB-2 (RMR-1029 Reference Material Receipt Record) (identifying amounts provided to BioPort and Battelle)." Defendant seeks to amend its Statement of Fact in support of the Motion to Dismiss to instead state: "The Reference Material Receipt Record maintained for RMR-1029 reflects an example of

6

a pre-attack shipment to a private facility. U.S. Ex. AB-2 (RMR-1029 Reference Material Receipt Record) (identifying the amounts provided to Battelle)."

f. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Based on the FTCA's Assault and Battery Exception) states at page 27, note 71: "In support of their motion to withdraw the stipulation regarding the criminal investigation's ultimate conclusion that Dr. Ivins was the assailant, Plaintiffs cited substantial testimony that no one at USAMRIID could have created the spores that were sent to Mr. Stevens. *See* Pls.' Mot. to Withdraw [DE# 139] at 2-6. In light of that evidence, Plaintiffs' inconsistent theories as to the potential assailant place at issue all persons who could have had access to RMR-1029, including the private facilities to which spores from RMR-1029 were sent. The United States adheres to the criminal investigation's ultimate conclusion, which eliminated everyone other than Dr. Ivins, but Plaintiffs' broadening of the universe of potential perpetrators implicates outside facilities, not just government employees." Since only one non-Governmental facility is known to have received live RMR-1029 anthrax material prior to the anthrax letter attacks, Defendant seeks to amend the last two sentences in note 71 of its Motion to Dismiss to instead state: "In light of that evidence, Plaintiffs' inconsistent theories as to the potential assailant place at issue all persons who could have had access to RMR-1029, including the private facility to which spores from RMR-1029 were sent. The United States adheres to the criminal investigation's ultimate conclusion, which eliminated everyone other than Dr. Ivins, but Plaintiffs' broadening of the universe of potential perpetrators implicates an outside facility, not just government employees."

g.  Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Based on the FTCA's Assault and Battery Exception) states at page 27: "Once Plaintiffs reject the government's concession that the evidence would show, more likely than not, that Dr. Ivins was the assailant, they open up the door to *anyone* having intercepted the kind of spores used in the attack (RMR-1029) during shipment or, more importantly, from one of the non-government operated facilities." Since only one non-Governmental facility is known to have received live RMR-1029 anthrax material prior to the anthrax letter attacks, Defendant seeks to amend the foregoing sentence to read: "Once Plaintiffs reject the government's concession that the evidence would show, more likely than not, that Dr. Ivins was the assailant, they open up the door to *anyone* having intercepted the kind of spores used in the attack (RMR-1029) during shipment or, more importantly, from a non-government operated facility."

(8) Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Based on the FTCA's Assault and Battery Exception) states at page 17: "Even if a facility were to conduct searches at every door – including strip searches – a scientist who had been inoculated to safely work with certain microorganisms could walk out of a facility undetected with one spore under his or her fingernail or with biological material injected into his or her bloodstream." The statement in the Motion concerning the prospect of an insider self-injecting a microorganism was based upon a statement to that effect in the cited Defense Science Board Task Force report, which discussed an insider's injection of a pathogen into his/her "body." The report does not mention injection into the bloodstream, or other types of injection (*e.g.*, subcutaneous), but simply refers to injection into a person's "body." Defendant seeks to amend its Motion, as follows, to accurately mirror the statement in the cited report of the Defense Science Board:

8

"Even if a facility were to conduct searches at every door – including strip searches – a scientist who had been inoculated to safely work with certain microorganisms could walk out of a facility undetected with one spore under his or her fingernail or with biological material injected into his or her body."

(9) On July 26, 2011, I contacted Plaintiffs' counsel Richard D. Schuler concerning the anticipated filing of this Motion, and Mr. Schuler advised that Plaintiffs have no objection to Defendant's Motion for Leave.

(10) I declare under penalty of perjury that the foregoing is true and correct this 27th day of July, 2011.

Leon B. Taranto, Trial Attorney
S.D. Fla. Bar No. A5501416
U.S. DEPARTMENT OF JUSTICE
Civil Division, Torts Branch
1331 Pennsylvania Ave., #8014 South
Washington, D.C. 20004
(202) 616-4231
Leon.B.Taranto@usdoj.gov